TIBERIU KLEIN, Individually;
TIBERIU KLEIN, as Co-
Administrator of the Estate
of Claudia Zvunca; and
JOHN XYDAKIS,

        Plaintiffs,

    v.

DANIEL E. O'BRIEN; WINTERS
SALZETTA O'BRIEN & RICHARDSON,
LLC; ADAM POWERS; STEVEN
LADUZINSKY; LADUZINSKY
& ASSOCS. PC.; GREYHOUND
LINES, INC.; FIRST GROUP PLC
LAIDLAW CORP.; PAUL BOZYCH;
CLAUSEN MILLER, LLP; WILSON
ELSER MOSKOWITZ EDELMAN &
DICKER LLP; NIELSON ZEHE &
ANTAS PC; MICHAEL VRANICAR;
MOTOR COACH IND. INC.; MOTOR
COACH IND. INT'L INC.; PATTON
& RYAN LLC; and CRISTINA
ZVUNCA,

        Defendants.

Case No. 16 C 11008

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

This case arises out of a tragic accident that occurred in January 2002 in Colorado. Claudia Zvunca was struck and killed by a Greyhound Bus. Her daughter, Cristina Zvunca ("Cristina"), who was eight years old at the time, witnessed the accident. Claudia's heirs were her husband, Tiberiu Klein ("Klein" or

"Plaintiff"), and Cristina.    Cristina, who was a step-daughter, had no blood relationship with Klein.    The bus driver was Wesley Jay Tatum ("Tatum").    The bus had been designed and manufactured by Motor Coach Industries, Inc., and Motor Coach Industries International, Inc. (collectively, "MCI").

One would think that such a straightforward wrongful death case would be uncomplicated.    Nothing could be further from the truth.    Unbelievably, this case has spawned at least 15 or more separate lawsuits in both state and federal court, and a multitude of appeals numbering at least 25.    Three Illinois Appellate Court opinions, *Cushing v. Greyhound Lines, Inc., et al.,* 965 N.E.2d 1215 (Ill. App. 1st. Dist. 2012) ("*Cushing I*"), *Cushing v. Greyhound Lines, Inc., et al.,* 991 N.E.2d 28 (Ill. App. 1st Dist. 2013) ("*Cushing II*"), and *Klein v. Motor Coach Industries, Inc., et al.,* 2017 IL App. (1st) 153617-U (Ill. App. 1st Dist. June 28, 2017) ("*Klein I*") have attempted to describe the convoluted history of this litigation, which this Court once described as "a convoluted attorney-created procedural labyrinth." *MB Financial, N.A. v. Stevens,* No. 11 C 798, 2011 WL 5514059, at *1 (N.D. Ill. July 5, 2011).    So as not to extend this opinion needlessly and confuse the reader, the Court will not attempt to describe the procedural background except as pertinent to the instant case.

## A.   Procedural History

On May 3, 2002, Klein, purportedly as Executor of his late wife's estate, filed a suit in the Circuit Court of Cook County pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, against Greyhound and Tatum.   Defendants removed the case to federal court and, on a *forum non conveniens* basis, it was transferred to the District of Colorado.   In 2003, at the same time that his Colorado suit was pending, Klein opened a probate estate for Claudia in Cook County Probate Court and had Greg Marshall, a paralegal from the law firm representing him at the time, appointed administrator.   In 2004, Marshall filed a wrongful death case against MCI, Number 04 L 3391 in the Circuit Court of Cook County.   Later Greyhound and Tate were added to the case as additional defendants.   In 2007, this case, apparently at Klein's behest, was voluntarily dismissed and refiled as Case No. 07 L 3391 (the "2007 suit") - likewise against Greyhound, Tate, and MCI - asserting wrongful death, survival claims, and a negligent infliction of emotional distress claim on Cristina's behalf.

The next seven years saw numerous changes in attorneys, guardians, and administrators, substitutions and recusals of judges, and numerous appeals, including *Cushing I* and *Cushing II*. By 2014, Cristina had attained her majority and was appointed Supervised Administrator of her mother's estate by the Probate

Court.  Defendant O'Brien and his firm were granted leave to substitute in as Cristina's attorneys for the 2007 suit.  It was also at this time that the case was reassigned to Judge John P. Kirby.

Also in 2014, Klein's Colorado suit was involuntarily dismissed under FED. R. CIV. P. 12(b)(1), because Klein had "no legal authority to pursue [the] wrongful death action and that lack of capacity [had] not been cured."  As it turned out, Klein had not sought nor received an appointment as executor from the Probate Court.

Klein, acting *pro se,* refiled his suit in Cook County Circuit Court on August 12, 2014, and was given Case No. 14 L 8478 (the "2014 suit").  The 2014 suit was assigned to Judge John P. Callahan.  It added a claim under the Colorado Wrongful Death Act and added defendants - MCI and Laidlaw and First Group PLC, the owners of Greyhound.  On March 17, 2014, Cristina and Klein were appointed Co-Administrators of Claudia's estate by the Cook County Probate Court.  Klein had previously been appointed administrator. On May 15, 2014, the Probate Court revoked Klein's letters in favor of making Cristina Supervised Administrator of her mother's estate.

Klein next moved to consolidate his 2014 suit with the 2007 suit over which Cristina was now the supervised administrator.

- 4 -

Judge Callahan denied his motion on August 13, 2015. On January 21, 2016, Judge Callahan dismissed Klein's suit (the 2014 suit) with prejudice, pursuant to 735 ILCS 5/2-619, stating as the reason for dismissal that "the Illinois [Wrongful Death] Act clearly describes a single action brought by the personal representative on behalf of the surviving spouse and next of kin." The opinion went on to state that Klein could not proceed because Cristina was the "duly appointed representative of her mother's estate. . . . To allow such a secondary suit to proceed would be to allow improper claim splitting." On February 22, 2016, Attorney John Xydakis ("Xydakis"), on behalf of Klein, filed a notice of appeal with the Appellate Court of the First District. In addition to the dismissal of his suit with prejudice, Klein and Xadakis named nine other orders which they sought to appeal. All of these matters, including the dismissal of the 2014 case, were resolved by the Appeals Court on June 28, 2017 in *Klein I*.

In April 2016, Cristina, through her lawyers, negotiated a settlement in principle in the 2007 case for a total of $4.95 million. She filed motions to have the settlement approved and for a dependency hearing on April 20, 2016. The court ordered that Klein be served with the motions to allocate the settlement and for a dependency determination. After Klein was served with the motion, he removed the 2007 case to federal court as Case

No. 16 CV 5304 and attempted to mount a collateral attack on the settlement. The federal judge immediately remanded the case back to the Cook County Circuit Court because Klein was not a party to the 2007 case. After remand, Klein filed motions seeking to quash service of process on him, for dismissal of the allocation petition, to substitute out Judge Kirby, for a change of venue, and filed a document he called a "Standing Objection to Court Jurisdiction, Authority and to Motion or Proceeding for Dependency and Allocation."

On August 25, 2016, Judge Kirby handed down a decision on dependency and allocation. The Complaint does not disclose the terms of this decision. On October 14, 2016, Judge Riley, a Probate Judge, entered an order in Claudia's estate approving the wrongful death portion of the settlement. On October 21, 2016, Judge Kirby ruled that all of the orders he had issued were final and appealable. Klein filed a notice of appeal as to all of Judge Kirby's orders, but at the same time sought reconsideration of Kirby's various orders and Judge Callahan's order denying consolidation of the 2014 case with the 2007 case. On March 21, 2017, Judge Kirby ruled that he lacked jurisdiction to hear Klein's motions because of the pending appeal. This appeal of Klein's remains pending in the Illinois Appellate Court.

Plaintiffs in this case are Klein, both in his individual capacity and as Co-Administrator of Claudia's estate (despite the fact that his letters of administration have been revoked), and his current attorney, Xydakis. Defendants include Klein's stepdaughter, Cristina; her current attorneys and their law firms; Greyhound, Laidlaw Corp, and First Group PLC (the current corporate owners of Greyhound) along with their attorneys and their law firms; and MCI, its attorneys, and their law firms.

## B. The First Amended Complaint

The First Amended Complaint (the "FAC") gives a rather disjointed and incomplete procedural and substantive history of the 2007 and 2014 cases, and includes quotes from some of the pleadings filed by certain of the Defendants, along with quoted passages from the rulings of both the Colorado federal court and the various Cook County judges. The FAC alleges that Klein's filing of the original case in Illinois Circuit Court, which was later removed and transferred to Colorado federal court, was proper because an Illinois Administrator was not necessary in light of the fact that Klein, as a surviving spouse, was the real party in interest (FAC ¶¶ 10-11); that in 2004, Cristina filed a wrongful death suit in Illinois, and Defendants Greyhound and MCI sought dismissal of her suit due to Klein's prior Colorado case, which motion the Cook County Court denied (*id.* ¶¶ 13-15); that the

- 7 -

Illinois Appellate Court in 2004 denied a motion for a stay of Cristina's case that was based on the alleged duplicative actions (*id.* ¶ 16); and that a year later, MCI unsuccessfully appealed a denial of a motion to dismiss, arguing that maintaining duplicative cases constituted *forum non conveniens* and forum shopping (*id.* ¶ 17).

Several other judicial actions are referred to in the FAC. In 2010, a Cook County Judge, Judge Haddad, who was then presiding over Cristina's case, was asked if he was trying to settle Klein's case, to which he responded "no." However, a few days later he entered a settlement order, supposedly settling Klein's case for $52,735.00. This settlement was overturned by the Illinois Appellate Court. (FAC ¶¶ 18-20.) In 2014, Klein's Colorado case was dismissed for lack of subject matter jurisdiction. Several months later, Klein "refiled" this case in the Circuit Court of Cook County. (*Id.* ¶ 22.) The Probate Court of Cook County appointed Cristina as Supervised Administrator for her mother's estate to pursue the 2007 case. The FAC cites to an order of the Probate Division providing that Klein and Cristina were "ordered" to maintain each's separate suits and not pursue claims for the other, that two separate suits could be maintained, and that Cristina – by serving as "administrator of her wrongful death claim, and also for her own negligent infliction of emotional

distress claim" – had a conflict of interest prohibiting her from representing Klein's interest as well as her own.  (*Id.* ¶¶ 23-24.) The case was then reassigned to another judge who recused himself because Cristina's attorney, Daniel O'Brien ("O'Brien"), donated thousands of dollars for the judge's reelection.  (*Id.* ¶ 26.)  The case was then reassigned to Judge Kirby.  O'Brien told Klein that he had connections "with Kirby and several other Cook County judges."  (*Id.* ¶ 26.)  O'Brian "repeatedly" assured Klein that Klein was not involved in Cristina's case and amended the Complaint to disclaim Klein's interest.  (*Id.* ¶ 27.)  All parties objected to Klein's Motion to Consolidate the 2014 case with the 2007 case.  The judge denied the Motion and said that "Klein should be thrown in jail."  In 2015, Kirby denied Klein's Motion to Intervene because Klein was not a dependent beneficiary in Cristina's case and thus lacked standing.  (*Id.* ¶ 28.)

The FAC further alleges that neither Greyhound nor MCI would settle Cristina's case as long as Klein's case was alive, so it was necessary for the Defendant lawyers and Kirby to "try to find a way around this."  (FAC ¶ 31.)  Kirby vacated the January 2016 trial date for the 2017 case and "[t]hen on information and belief, Kirby, O'Brien, Vranicar and Bozych get Klein's judge to dismiss Klein's case with prejudice.  Kirby and that judge share the same law clerk.  The dismissal order states Klein's interests

must be pursued in Cristina's case in front of Kirby." (*Id.* ¶ 32).

Paragraph 33 reads as follows: "O'Brien tells Klein that he must also disclaim any interest in Cristina's case to ensure his rights cannot be adjudicated there. Klein provides him with one. O'Brien then ensures Klein and others cannot contact Cristina." The next paragraph alleges that O'Brien arranged for an apartment for Cristina when she visited Chicago but refused to disclose her address, that O'Brien then got an order barring Klein from communicating with Cristina, and that, when a notice for Cristina's deposition was issued (presumably by Klein), "Powers and Laduzinsky (presumably at O'Brien's request) threatened sanctions." (*Id.* ¶ 34.) From February through April 2016, Kirby allegedly held *ex parte* discussions with O'Brien, Bozych, and Vranicar to settle Cristina's case. "When they see Klein or his agents in the courtroom, they close the conference room door so that they cannot hear what is going on." (*Id.* ¶ 35). "In approximately June 2016, Kirby, O'Brien, Bozych, and Vranicar 'settle' Cristina's case without prior notice to Klein. The settlement allocates 60% of the proceeds to wrongful death, and 40% to Cristina's negligent infliction of emotional distress claim." (*Id.* ¶ 36.) To avoid the Probate Court order barring Cristina from pursuing Klein's case, O'Brien hired Powers and Laduzinsky to represent Cristina in the "dependency hearing"

phase; O'Brien, however, controlled them and paid them. (*Id.* ¶ 37.) Powers and Laduzinsky presented the petition to approve the settlement even though they were not the wrongful death attorneys. (*Id.* ¶ 38.) Klein filed a Motion to Substitute Judge Kirby, which Judge Kirby denied without briefing on the grounds that Klein lacked standing as a non-party. (*Id.* ¶ 39.) On August 25, 2016, Judge Kirby held a hearing with O'Brien, Powers, Laduzinsky, Bozych, and Vranicar present. Powers and Laduzinsky argued that Cristina deserved the whole settlement. Judge Kirby ruled that Klein should not receive anything because he disclaimed his interest. (*Id.* ¶ 40.) According to Plaintiffs, Judge Kirby, O'Brien, Bozych, Vranicar, Powers, and Adams intended to injure Klein and deprive him of his rights, and acted jointly, knowingly, maliciously, and ratified each other's conduct (*Id.* ¶ 43.)

Finally, in paragraph 44, Klein lists 15 acts on the part of Kirby that he contends violated his constitutional rights:

> 44. Other actions reveal O'Brien, Bozych, Vranicar, Powers, and Adams participation, aid, and/or complicity with Kirby to violate Klein's due process, equal protection, and other rights including, without limitation:
>
> a. *Sua sponte*, Kirby raises Klein's "disclaimer;"
>
> b. No briefing was ever done on any "disclaimer" issue. Instead, they wait until after Cristina's case settles to argue that the "disclaimer" bars Klein from recovering. However, after Klein learns the "disclaimer" is used by O'Brien, Adams, Powers, and Kirby to allege Klein had an interest in Cristina's case

and it was "disclaimed," Klein revoked the "disclaimer." In addition, Klein then produced a "disclaimer" signed by Cristina that O'Brien claimed to revoke. Despite this, Kirby held Klein's "disclaimer" was effective;

c. *Sua sponte*, Kirby orders O'Brien, Bozych and Vranicar to provide him with any transcripts for any proceedings in Klein's case, presumably so Kirby can decide issues based on his own private investigation and knowledge;

d. Kirby also orders O'Brien to provide him with documents in Klein's case and attend Klein's proceedings in front of another judge. O'Brien then repeatedly appears and interferes in Klein's proceedings claiming he is there as a "friend of the court" and argues against Klein's interests;

e. When Klein's attorney files motions in Kirby's case or when motions were filed addressing Klein's attorney, Kirby refuses to allow the requisite time to respond mandated by the Cook County Local Rules. Kirby would often "reset" the motion date Klein's attorney spindled and then strike the motion if Klein's attorney failed to appear;

f. Kirby, O'Brien and Bozych allow Greyhound's motion to dismiss Cristina's case based on claim splitting to pend for over a year and Kirby never rules on it;

g. Kirby awards O'Brien 1/3 of the total settlement even though O'Brien did little work on the case and was unprepared for trial. Kirby then slashes the other attorney's fees to a fraction of what they seek and holds several more *ex-parte* discussions regarding fee issues without attorneys present;

h. Kirby repeatedly allows "emergency motions" by O'Brien, Powers and Laduzinsky. For example, from January 2016, Kirby allows roughly a dozen non-emergency motions to be heard as "emergencies." The motions are invariably filed late in the day and Kirby hears them outside normal courtroom hours the next day in the early morning;

i. Kirby's [*sic*] repeatedly enters "*nunc pro tunc*" orders for O'Brien, Adams, Powers, and Bozych, not to correct clerical errors, but to add judicial actions. Many are entered on "oral motions" or apparently done *sua sponte*;

j. Kirby allows O'Brien's costs for reimbursement of over $25,000 to house and feed Cristina and her grandparents in Chicago for two years, claiming it is a litigation expense, even the Illinois Rules of Professional Conduct prohibit an attorney from loaning or giving money to a client;

k. Kirby, O'Brien, Bozych, Vranicar, Powers and Laduzinsky violate the Probate Order barring Cristina's [*sic*] from seeking relief for Klein;

l. Kirby, O'Brien, Bozych, Vranicar, Powers and Laduzinsky claim Klein is a dependent beneficiary even though when denying Klein's petition for intervention and withdrawal of his attorney, Kirby entered an order stating Klein is not a "dependent beneficiary;"

m. O'Brien obtains an *ex-parte* injunction without even a motion seeking injunctive relief barring Klein from contacting Cristina;

n. Kirby, O'Brien, Bozych, Vranicar, Powers and Laduzinsky claim Klein is a dependent beneficiary, even though the operative Complaint in Cristina's case specifically disclaims seeking any relief on behalf of Klein. Instead, they wait until after Cristina's case "settle" [*sic*] to claim Klein has an interest; and/or

o. Kirby allows O'Brien to represent Cristina as administrator and in her own individual claims, and allegedly to represent Klein's interests before the dependency phase, even though attorneys have been disciplined for such actions.

## II.  <u>DISCUSSION</u>

Plaintiffs' theory as set forth in the First Amended Complaint is that the defendant lawyers conspired with a Cook County Circuit Judge, John Kirby, to violate Klein's Fourteenth

Amendment due process and equal protection guarantees, as well as to commit fraud and intentionally interfere with Klein's expectancy in pursuing his own claim for damages. In Count I, he brings a Section 1983 claim that his rights to due process were denied by a conspiracy consisting of all Defendants, including the lawyers, their law firms, the parties, and Judge Kirby, to deny him the right to recover for the loss of his wife. In Count II, Klein brings a Section 1983 denial of equal protection claim against the same group. Count III, a state law claim against the same Defendants, is based on common law fraud. Count IV claims that the same Defendants intentionally interfered with "Klein's expectancy in pursuing his own case for damages." In Count V, Xydakis sues Cristina for what appears to be a portion of her settlement on a *quantum meruit* theory for the work he performed as her attorney. In all of the counts, Klein is seeking money damages, costs, and attorney's fees. In addition to seeking money damages in Counts I and II, Klein asks for a declaration that he "may seek relief for his damages relating to the death of his wife in a separate proceeding and his rights were not adjudicated with Kirby's case."

Defendants have moved to dismiss based on this Court's lack of jurisdiction to hear the case under the familiar *Rooker-Feldman* doctrine. *See, Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923);

*District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).    This   doctrine   forbids   lower   federal   courts   from exercising  jurisdiction  over  cases  brought  by  state  court  losers challenging state court judgments rendered before commencement of the district court proceedings.    The rationale for the doctrine is that  no  matter  how  wrong  a  state  court  judgment  may  be  under federal  law,  only  the  Supreme  Court  of  the  United  States  has jurisdiction  to  review  it.    *Brown v. Bowman,* 668 F.3d 437, 442 (7th  Cir.  2012).    Defendants  point  out  that  the  cases  have  been proceeding in state court for more than 15 years and have finally have  been  brought  to  a  conclusion  with  a  state-court-approved settlement and with the First District appellate decision in *Klein I* handed  down  on  June  28,  2017,  which  affirmed  the  state  trial court's dismissal of Klein's case with prejudice.

Klein  however  contends  that  he  is  not  trying  to  undue  the state court judgment.   Instead, he says that he is relying on an exception  to  *Rooker-Feldman* announced  in  *Nesses v. Shepard,* 68 F.3d 1003 (7th Cir. 1995).   In that case, Judge Posner described a hypothetical  case  that  was  not  covered  by  *Rooker-Feldman*.   If  a plaintiff  were  to  complain  that  the  defendants  had  corrupted  the state  judicial  process  by  which  they  were  able  to  obtain  a favorable  judgment,  such  a  claim  would  not  be  foreclosed  by *Rooker-Feldman* so that he would be able to attempt to vindicate

his rights in federal court despite the fact that he lost in state court.

## A.  Count I - Due Process

In attempting to parse Klein's Complaint here, it does appear that he is complaining of being dealt a losing hand by a conspiracy of lawyers and Judge Kirby.  Of course, it is necessary that he include Judge Kirby, who has absolute immunity, in order to have a state actor; otherwise there would be no basis for a Section 1983 claim for damages.  According to the Complaint, Judge Kirby was assigned the case in August 2014, which was about the time that Cristina's current attorneys entered appearances in the wrongful death case.  Therefore, the "conspiracy" would not have commenced prior to August 2014.  Thus, the historical allegations made in the Complaint - consisting of Klein's objections to orders, legal positions, and statements taken and made by Defendants and their lawyers along with rulings and statements made by judges other than Judge Kirby, including a so-called settlement that was allegedly forced upon Klein in 2010 (which involved none of the lawyer Defendants) and was invalidated by the Illinois Appellate Court in *Cushing II* - would not be a part of the conspiracy.

This leaves as acts of the conspiracy allegations that Cristina's attorneys failed to prepare adequately for trial, took

litigation positions and made statements that Klein believes are incorrect, and kept Klein away from Cristina. Also, the acts of conspiracy include allegations that Judge Kirby and Judge Callahan, who dismissed Klein's case (the 2014 suit), "share[d] the same law clerk;" that Kirby held "*ex-parte* discussions" with the defendant lawyers in an attempt to settle the case from which "Klein or his agents" were excluded; that in June 2017 the parties settled the case without prior notice to Klein, allocating 60% to the wrongful death claim and 40% to Cristina's negligent infliction of emotional distress claim; that Judge Kirby denied Klein's motion to intervene; that Cristina as supervised administrator had a conflict of interest; that Defendant O'Brien hired lawyer Defendants Powers and Luduzinsky to represent Cristina at the dependency phase; that the Defendant lawyers changed positions from contending that Klein did not have an interest in the dependency phase to contending that he did; that Judge Kirby raised the disclaimer issue; that Judge Kirby ordered Defendant O'Brien to attend hearings in the 2014 case; that Judge Kirby set Klein's motions without adequate time for him to "respond," in violation of local rules; that Judge Kirby failed to rule on a Greyhound motion to dismiss the 2007 case; and that Judge Kirby allowed multiple non-emergency motions to be heard as emergencies and used *nunc pro tunc* orders for non-clerical

corrections.  Klein makes a number of other "objections" that either have been specifically ruled on in the June 28, 2017 Appellate Court ruling or were not relevant to the status of 2007 suit presided over by Judge Kirby.

The question is whether these so-called orders, actions, statements, and rulings - taken as true for the purposes of this motion to dismiss - rise to the point where it can be said that Klein's due process rights were violated.  While Defendants' Motion to Dismiss is based on lack of jurisdiction and is brought pursuant to FED. R. CIV. P. 12(b)(1), nevertheless even if a plaintiff can get by the jurisdictional bar of Rooker-Feldman and issue preclusion, he still must state a claim on the merits; in other words, he must state a claim upon which relief could be granted.  *See, Mains v. Citibank, N.A.,* 852 F.3d 669, 677 (7th Cir. 2017) ("In short, even if aspects of the TILA claim fall outside the scope of *Rooker-Feldman*, it survives the jurisdictional bar only to be dismissed on the merits.")

It is clear that all of Klein's grievances when added together, including the ones that are obviously subject to claim preclusion, fall far short of establishing a violation of his rights to due process.  Many of his complaints have already been decided by the Appellate Court's June 28, 2017 opinion in *Klein I*, including the dismissal of the 2014 suit, the denial of

consolidation, and denial of his loss of consortium claim. Other claims are either constitutionally irrelevant - the alleged improper use of *nunc pro tunc* orders, the alleged violation of Cook County Local Rules, the use of emergency motions, and the entry of an injunction to prevent Klein from contacting Cristina – or are contrary to the requirements of the Illinois wrongful death statute (740 ILCS 180-2) and the holding in *Klein I.* For example, he claims that where the administrator of a wrongful death case is one of the beneficiaries, a special administrator must be appointed. He fails to cite to any provision of the Act or any court decisions that might support such a position. Specifically, the statute says that the wrongful death action "shall be brought by and in the names of the personal representatives of such deceased person. . . ." There is no provision in the statute that divests the personal representative, who also happens to be a beneficiary, of her office. *Johnson v. Provena St. Therese Medical Center,* 778 N.E.2d 298 (Ill. App. 2nd Dist. 2002), holds that it is the duty of the trial court to protect the interest of the beneficiaries, exercise of which is subject to the abuse of discretion standard. *See also, In re Estate of Williams,* 585 N.E.2d 235, 238 (Ill. App. 5th Dist. 1992). If the beneficiaries are dissatisfied and think the exercise of discretion was abused, they have the right to appeal the trial court dependency

determination.  *Mortensen v. Sullivan,* 278 N.E.2d 6 (Ill. App. 2nd Dist. 1972).   Klein also states that a beneficiary has "an absolute right to present [his] damages before any settlement or trial, not just at a dependency hearing. . . ."   However, all the statute says is that "[t]he amount recovered in any such action shall be distributed by the court in which the cause is heard, or, in the case of an agreed settlement, by the circuit court, . . . in the proportion, as determined by the court. . . ."   There is no requirement that a beneficiary be allowed to participate in the settlement talks, particularly where, as here, there is animosity between the beneficiaries, and Klein cites no authority stating otherwise.   Here the Probate Court approved the settlement amount, and the Circuit Court held a hearing to determine the percentage of dependency of the two beneficiaries.   That is all the law requires.   If a beneficiary is unhappy with his allocation he has the right to take an appeal to the Appellate Court.   *See generally, Mortensen*.   The Cook County Circuit Court sought to hold a dependency hearing.   Klein tried to thwart it by unsuccessfully seeking reconsideration of his motion to consolidate the 2014 case with the 2007 case.   Poignantly, Klein does not allege that he was denied the right to a dependency hearing.   It would be difficult for him to do so since he sought to stop the dependency phase by removing the 2007 case to federal

court where he attempted to launch a collateral attack against the settlement. The district judge promptly remanded the case back to the Cook County Court, noting that Klein was not a party to the case. Remarkably, Klein fails to disclose what occurred after remand in the Circuit Court with respect to a dependency hearing or whether he took an appeal after such a hearing. He also does not allege whether he appealed the decision of the Probate Court to approve the settlement of the wrongful death claim.

Klein appears to be contending that the apportionment of the settlement between the wrongful death count and Cristina's negligent infliction of emotional distress claim was unfair to him. He certainly was within his rights to object to the decision of the Probate Court judge, and he would be within his rights to appeal the approval. As previously noted, the Complaint does not state whether he filed such an appeal. Klein could certainly argue during the dependency phase that, in exercising discretion when assessing the future needs of the two beneficiaries and deciding the allocation between Cristina and Klein, the court should take into consideration that Cristina will have $2 million (less attorney's fees) as an asset.

The answer to Klein's effort to rescue his case lies with the state courts. *Mains*, 852 F.3d at 676 ("The state's courts are quite capable of protecting their own integrity.") The procedural

history of this case amply demonstrates that Illinois courts are capable of insuring justice to their litigants. The Illinois Appellate Courts on at least two occasions in this very case have reversed trial court rulings on several important matters, including the 2010 attempt to settle Klein's case. The availability of appeals under Illinois law supplies all of the due process Klein requires. He has demonstrated that he is not afraid of using the appeals process to attempt to vindicate his rights. He has filed multiple appeals during the tortuous course of this 15 year procedural nightmare, both *pro se* and through counsel.

If the federal courts granted to state court litigants who feel or believe that they have been treated unfairly by a state court judge, the right to bring Section 1983 cases in lieu of state court appeals, we would open the floodgates to a massive amount of duplicate litigation. While state court judges (as well as federal judges) can become aggravated by the conduct of recalcitrant litigants whom they believe to be abusing trial and appellate procedures by needlessly obfuscating and prolonging lawsuits – and it is also a fact that aggravated judges can be irritable and perhaps rude at times - irritability and rudeness do not rise to violations of due process. As stated earlier in this Opinion, this case has been pending for more than 15 years, and has engendered countless motions, lawsuits, and appeals as well as

apparent animosity between the attorneys and between Cristina and Klein. An eight-year-old girl lost her mother in a tragic accident, and she has had to wait more than 15 years for a resolution of this case. Fifteen years is too long, and this matter has to come to a resolution. To conclude, this Court believes that Klein has not been denied due process but instead has received far more than is due. Count I is dismissed.

### B. Count II - Equal Protection

In Count II Klein brings a Section 1983 constitutional tort claim based on alleged denial of equal protection by Defendants, conspiring with Judge Kirby. Under traditional equal protection analysis, a governmental body may not treat classes of people differently without the difference being rationally related to a legitimate governmental interest. *U.S. Dept. of Agriculture v. Moreno,* 413 U.S. 528 (1973). Klein does not allege that he is a member of any specific group or class, such as race or religion, that has been discriminated against. While there are cases involving class of one equal protection claims, see, *Del Marcelle v. Brown County Corp.,* 680 F.3d 887 (7th Cir. 2012), Klein does not plead such a claim. In fact, he merely relies upon the same factual predicates underlying Count I. However, even if Klein attempted to do so, he would fail. In order to bring a class of one equal protection claim, there must be underlying

discriminatory treatment alleged that is different from what others similarly situated receive and not rationally related to a legitimate governmental interest. Certainly the courts of Cook County have a legitimate interest in running their court system efficiently and bringing legal proceedings to a timely conclusion. In order to insure fairness to litigants, the state provides a complete appellate review system. As we have seen in the discussion of Count I, Klein has raised no set of facts that demonstrate that he was treated unfairly or irrationally. For these reasons, Count II is dismissed.

Both Counts I and II also seek "a declaration that Klein may seek relief for his damages relating to the death of his wife in a separate proceeding and his rights were not adjudicated within Kirby's case." This of course flies in the face of the holding in *Klein I,* where the Illinois Appellate Court specifically held that Klein's wrongful death action, the 2014 case, had been properly dismissed because he had no authority to file such a case separate from the personal representative of the estate. Clearly, such a declaration is foreclosed by claim preclusion (or possibly *Rooker-Feldman*).

Since the Court has dismissed the two federal claims, the Court will exercise its discretion and dismiss the state law claims prayed in Count III and Count IV.

There is no Motion brought regarding Count V.

### III.   CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss [ECF No. 39] is granted and Counts I, II, III, and IV are dismissed.

**IT IS SO ORDERED.**


_____
     Harry D. Leinenweber, Judge
     United States District Court

Dated: August 1, 2017